The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Haigh and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FADO
1. Plaintiff is a six foot, approximate 280 pound, 49 year old married male. He is a high school graduate and has also taken numerous law enforcement courses. In the late 1960's plaintiff joined the Marine Corps, but was honorably discharged some six months later after developing problems with his dominant right hand in training. His other prior work experience has included working as a mechanic for both a hosiery mill and plastic manufacturer.
2. In March of 1971, however, he became employed by defendant-employer as a patrolman responsible for walking the beat and operating a patrol car. Over the next twenty years plaintiff continued to work for defendant-employer as a police officer, rising to the rank of Sergeant, but because of the permanent back and left knee injuries giving rise hereto is no longer able to engage in the required physical activities of the same job.
3. On February 15, 1991, in the process of scuffling with a suspect he was attempting to arrest, plaintiff sustained the admittedly compensable right hand injury that was the subject of the prior Industrial Commission Award in I.C. File No. 122467 pursuant to which compensation was paid during his period of time out of work.
4. At the time plaintiff returned to work for defendant-employer he had neither reached maximum medical improvement and/or the end of the healing period from and following his February 5, 1991 right hand injury nor was he capable of returning to his regular police officer's job. Plaintiff was capable of alternate light duty work and remained under the care of his principal treating physician, Dr. Kelling, a Reidsville orthopedic surgeon, who had originally contemplated keeping plaintiff out of work for an additional two weeks and only released him to light duty work at the insistence of the City's Police Chief, Festerman, who contacted Dr. Kelling without plaintiff's prior knowledge. Under the foregoing circumstances, the Industrial Commission's prior Award in I.C. File No. 122467 was not a final Award, subject to the limitations of G.S. § 97-47, that compensated plaintiff for all the compensation and medical compensation benefits due for the injury to his dominant right hand.
5. While still recovering from the same hand injury and on light duty working traffic at the Rockingham Farm and Home Show, plaintiff tripped and fell resulting in the admittedly compensable multiple injuries that were the subject of the Industrial Commission Awards in I.C. File No. 132856, including not only a permanent left knee injury, but injuries to his low back, neck, right hip, left elbow, left ankle and both wrists, and pursuant to the same Awards was compensated until he returned to work as a part-time police dispatcher on May 23, 1991 and thereafter for the resulting partial diminution in his wage earning capacity.
6. Again at the time plaintiff returned to work for defendant-employer he had neither reached maximum medical improvement and/or the end of the healing period from and following the multiple injuries sustained on April 26, 1991 nor was he capable of returning to his regular police officer's job; but rather, only of alternate light duty as a part time police dispatcher and was still being treated for the same injuries.
7. Following plaintiff's return to work on a part time basis as a police dispatcher the Industrial Commission entered a subsequent Award of partial disability benefits for the resulting diminution in his wage earning capacity. Ultimately on January 22, 1992 he was able to return to full time work as a police dispatcher earning the same wage that he did at the time of his injury or the $532 shown on the Industrial Commission's binding original Award. That Award can only be set aside pursuant to the provisions of G.S. § 97-17 if entered into in error due to fraud, misrepresentation, undue influence or mutual mistake none of which has been alleged shown herein. Therefore, whether the supplemental contribution to the 401k plan provided to active duty police officers should have been included in determining plaintiff's average weekly wage is moot.
8. The Industrial Commission's last Award of partial disability benefits in I.C. File No. 132896 was not a final Award subject to the limitations of G.S. § 97-47 because it did not compensate for the resulting fifteen percent permanent partial disability of the left leg plaintiff sustained when he tripped and fell at the Rockingham County Farm and Home Show injuring his left knee on April 26, 1991. At the time the Form 28B Report of Compensation and Medical paid was filed in defendant-employer's behalf in February of 1993, the same employer knew or should have known that Dr. Nitka had rated plaintiff as retaining a fifteen percent permanent partial disability of the left leg as a result of the same left knee injury. The rehabilitation specialist, Sandy Collins, of Comprehensive Rehabilitation Associates, assigned to plaintiff's case by defendant-employer, was not only provided a copy of Dr. Nitka's September 9, 1992 office note rating plaintiff's disability, but also a copy of Dr. Nitka's subsequent December 11, 1992 note reiterating his earlier rating.
9. In August of 1991 Dr. James E. Nitka, a Greensboro orthopedic surgeon, had assumed care of the multiple injuries plaintiff sustained on April 26, 1991 and provided a conservative course of treatment.
10. In March of 1992 Dr. Nitka referred plaintiff to a psychiatrist, Dr. Badawi, because of the chronic and resulting depressive and anxiety disorders that he had developed from the cumulative effect of his February 5, 1991 and April 26, 1996 injuries, which conditions were contributed to by the manner that he had been harassed and mistreated by the Chief of Police and his other supervisors from the time of his February 5, 1991 injury and continuing up until the time of his last injury on January 28, 1993, including, but not limited to: questioning whether he was really injured or malingering; mocking him; providing him with unsuitable light work washing police cars; not allowing him time off for medical appointments and questioning him when he left for one; forcing him to work bizarre hours and during the healing period while he was still undergoing treatment; transferring him to a permanent job as a police dispatcher where he would lose the supplemental 401k retirement benefits provided to active duty police officers.
11. In the Summer of 1992 Dr. Nitka referred plaintiff to a pain management program at High Point Regional Hospital, where he underwent six weeks of treatment in an unsuccessful attempt to alleviate his chronic pain.
12. Plaintiff had not reached maximum medical improvement and/or the end of the healing period from the cumulative psychological or emotional consequences of his February 5, 1991, April 26, 1991 and January 28, 1993 injuries and because of those same consequences has remained totally disabled and unable to return to work for defendant-employer in any capacity since January 22, 1994 for the reasons more fully hereinafter described in the findings of fact below. By September 9, 1992 he had reached maximum medical improvement and/or the end of the healing period from and following the left knee injury sustained on April 26, 1991, at which time he retained a fifteen percent permanent partial disability of the left leg entitling him to thirty weeks of compensation at a rate of $354.68 per week commencing as of September 9, 1992, subject to those same benefits being temporarily suspended when plaintiff was hospitalized by Dr. Badawi during the period from November 5, 1992 to December 11, 1992, as well as during the period from January 28, 1993 to June 7, 1993 when he was totally disabled by the intervening back injury sustained on January 28, 1993.
13. When the magnitude of his pain and resulting depression and anxiety increased to the point that plaintiff became suicidal, Dr. Badawi admitted him to Moses H. Comb Memorial Hospital from November 5, 1992 to November 13, 1992. While hospitalized plaintiff not only received treatment for those incapacitating problems, but underwent additional diagnostic studies, including a myelogram and post-myelogram DO scan.
14. On December 11, 1992 Dr. Nitka released plaintiff from his care to return to work and despite his chronic pain and the depressive and anxiety disorders that Dr. Badawi continued to treat, plaintiff again returned to work for defendant-employer as a police dispatcher and continued regularly working in the same capacity earning the same wage that he did as a police officer until January 28, 1993.
15. While working as a police dispatcher on the last mentioned date plaintiff not only experienced an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, but a specific traumatic incident when he was attempting to roll the chair in which he was sitting across the floor and the same chair unexpectedly stopped, jerking his back resulting in multiple compression fractures of the thoracic spine and thereby the disabling, and otherwise compensable, back injury giving rise to his claim in I.C. File No. 314820.
16. On the same date plaintiff was seen by Dr. McGough and was not only given a shot as well as placed on Flexeril, but referred back to Dr. Nitka and excused from work until he was seen by him. Three days later plaintiff returned to Dr. Nitka, who continued him out of work due to his disabling back injury and began a conservative course of treatment, including as part thereof, multiple medications, physical therapy and back support.
17. By June 7, 1993 plaintiff had sufficiently recovered from the multiple thoracic compression fracture sustained on January 28, 1993 so as to be able to attempt to return to alternate lighter work as a police dispatcher on a four to six hour basis initially and then later increasing to six hours a day.
18. Due to the chronic pain that he was continuing to experience and his difficulty working as a police dispatcher on even a six-hour per day basis, in November of 1993 Dr. Nitka referred plaintiff for a functional capacity evaluation to determine whether he was capable of returning to a heavier and more prolonged work status. Plaintiff, however, was unable to undergo the scheduled functional capacity evaluation when his blood pressure was dangerously high, due to stress from not only his continuing chronic pain from the cumulative effect of the three injuries involved that affected his ability to do alternate lighter sedentary work as a police dispatcher on even a six-hour a day basis; but also the manner that he was continuing to be harassed and mistreated about those same work-related injuries by the Chief of Police and other supervisors.
19. At that time plaintiff was already being treated with medication for his hypertension by Dr. Bland, a Reidsville family practitioner. Because the stress from the involved injuries was aggravating his hypertension, Dr. Bland not only took plaintiff out of work on January 22, 1994, but referred him to UNA Psychological Associates for stress management and at the time of hearing plaintiff was continuing to undergo cognitive behavioral therapy from the two therapists there.
20. Although he had neither reached maximum medical improvement and/or the end of the healing period from and following the cumulative emotional or psychological consequences of his February 5, 1991, April 26, 1991 and January 28, 1993 injuries nor was he able to return to his regular police officer's job, by March 19, 1994 with the treatment he received at UNA Psychological Associates plaintiff's condition, at least temporarily, improved to the point that he was capable of attempting to return to alternate part-time work as a police dispatcher working no more than six hours a day. He was allowed five minute breaks every hour to relieve the long periods of sitting that aggravated his chronic pain, was provided a straight back chair, and the equipment used in his work (i.e., computer, telephone and radios) was arranged in such a manner to reduce the aggravation of his chronic pain. Defendant-employer, however, refused to provide the type of suitable modified part time work required, which only further contributed to the chronic pain and resulting emotional or psychological problems that plaintiff developed from the cumulative effect of the three injuries. His psychological problems included not only depressive and anxiety disorders, but the post-traumatic syndrome plaintiff also developed from the manner that he was emotionally assaulted by the way the Chief of Police and his other supervisors treated him, classically manifested by symptoms of avoidance, recurrent thoughts and inability to concentrate. Because of these same problems it would be too emotionally traumatic for plaintiff to attempt to return to work for the City of Reidsville's Police Department in any capacity at this time unless and until his emotional or psychological problems substantially improve.
21. Because plaintiff did not feel that he was receiving adequate medical care for his psychological or emotional problems from Dr. Badawi, which is the type of suspiciousness characteristic of a post-traumatic stress disorder, the therapist providing him treatment at UNA Psychological Associates, Roger Reid, referred plaintiff to another psychiatrist, Dr. Irvine Plovsky, who has been treating him since February of 1994.
22. Although there has been some improvement in his psychological or emotional symptoms with the continued treatment he has received from Dr. Plovsky and at UNA Psychological Associates, plaintiff has not yet reached maximum medical improvement and/or the end of the healing period from and following the cumulative emotional or psychological consequences of the three injuries involved, nor is he emotionally or psychologically capable of returning to work at defendant-employer's police department in any capacity at this time.
23. Plaintiff has not yet reached maximum medical improvement and/or the end of the healing period from and following the cumulative emotional or psychological consequences of his February 5, 1991, April 26, 1991 and January 28, 1993 injuries and because of those same consequences has remained totally disabled since January 22, 1994. Plaintiff was unable to return to work in any capacity for defendant-employer, which failed to provide plaintiff with suitable alternate modified work when he was capable of attempting to return to that type of work, at least on a temporary basis, on March 19, 1994 before his emotional or psychological condition worsened resulting in him being unable to return to work for defendant-employer in any capacity. By November 23, 1993 he had reached maximum medical improvement and/or the end of the healing period from and following the physical consequences of the back injury sustained on January 28, 1993, at which time he retained a twenty-five percent permanent partial disability of the back from the same injury. Plaintiff is therefore entitled to receive seventy-five weeks of compensation at a rate of $354.68 per week commencing as of November 23, 1993, subject to those benefits being temporarily suspended on January 22, 1994 when plaintiff again became totally incapacitated by the cumulative emotional or psychological consequences of his injuries and subject to being resumed should plaintiff ultimately recover from those disabling emotional or psychological consequences and be able to return to work.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On February 5, 1991 plaintiff sustained the admittedly compensable right hand injury giving rise to the Industrial Commission's Award in I.C. 122467 pursuant to which compensation was paid during his period of time out of work; however, for the reasons stated in the above findings of fact the same Award was not a final one subject to the limitations of G.S. § 97-47.
2. On April 26, 1991 while still on light duty and recovering from his February 5, 1991 right hand injury, plaintiff sustained the admittedly compensable multiple injuries giving rise to the Industrial Commission Awards of temporary total and temporary partial disability in I.C. File No. 132256; however, for the reasons stated in the above findings of act the last Award of temporary partial disability benefits was not a final one subject to the limitations of G.S. § 97-47.
3. Although plaintiff had neither reached maximum medical improvement and/or the end of the healing period from and following the cumulative emotional or psychological consequences of his February 5, 1991, April 26, 1991 and January 28, 1993 injuries by September 9, 1992 he had reached maximum medical improvement and/or the end of the healing period from and following the left knee injury sustained on April 26, 1991, at which time he retained a fifteen percent permanent partial disability of the left leg as a result of the same injury. Plaintiff is entitled to receive thirty weeks of compensation at a rate of $354.68 commencing as of September 9, 1992, subject to those same benefits being temporarily suspended during the period from November 5, 1992 to December 11, 1992 after plaintiff was hospitalized by Dr. Bodawi, as well as during the period from January 28, 1993 to June 7, 1993 when plaintiff was totally disabled by the intervening back injury sustained on January 28, 1993. G.S. § 97-31(15).
4. On January 28, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment resulting in the disabling back injury giving rise to his claim in I.C. File No. 314820. G.S. § 97-2(6).
5. As a result of his January 28, 1993 back injury plaintiff was temporarily totally disabled from January 28, 1993 to June 7, 1993 when he attempted to return to part time work as a police dispatcher. G.S. § 97-29.
6. By November 23, 1993 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the physical consequences of the back injury he sustained on January 28, 1993, at which time he retained a twenty-five percent permanent partial disability of the back from the same injury entitling him to seventy-five weeks of compensation at a rate of $354.68 per week commencing as of November 23, 1993, subject to those benefits being temporarily suspended on January 22, 1994 when plaintiff again became totally incapacitated by the cumulative emotional or psychological consequences of his injuries and subject to being resumed should plaintiff ultimately recover from the disabling emotional or psychological consequences of those injuries and be able to return to work.
7. Since January 22, 1994, however, plaintiff has remained totally disabled from the cumulative psychological or emotional consequences of his February 5, 1991, April 26, 1991 and January 28, 1993 injuries, which has resulted in the chronic pain and incapacitating psychological or emotional problems described in the above findings of fact entitling him to compensation at a rate of $354.68 from January 22, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. Although by March 19, 1994 plaintiff had recovered from his January 28, 1993 injury so as to be able to attempt to return to alternate modified lighter sedentary work as a police dispatcher within the limitations described in the above findings of fact, defendant-employer was unable or unwilling to provide him with suitable work and plaintiff's emotional or psychological condition has since worsened such that he remains unable to return to work for defendant-employer in any capacity at this time.
8. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the January 21, 1991, February 5, 1991 and April 26, 1993 injuries giving rise hereto, including the treatment that he continues to require for the disabling emotional or psychological condition that he has developed as a cumulative consequence of the same injuries.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $354.68 during the periods from November 5, 1992 to December 11, 1992 and from January 28, 1993 to June 7, 1993. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. Defendant shall pay plaintiff, on account of his retained fifteen percent permanent partial disability of the left knee, thirty weeks of compensation at a rate of $354.68 per week commencing as of September 9, 1992, subject to those benefits being temporarily suspended during the subsequent periods that plaintiff was temporarily totally disabled from November 5, 1992 to December 11, 1992 and January 28, 1993 to June 7, 1993. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
3. Defendant shall pay plaintiff, on account of his retained twenty-five percent permanent partial disability of the back, seventy-five weeks of compensation at a rate of $354.68 per week commencing as of November 23, 1993, subject to those benefits being temporarily suspended on January 22, 1994 when plaintiff again became totally incapacitated by the cumulative emotional or psychological consequences of his injuries and subject to being resumed should plaintiff ultimately recover from those disabling emotional or psychological consequences and be able to return to work. Such compensation as has accrued hereunder the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
4. Defendant shall pay plaintiff, on account of his continuing total disability from the cumulative emotional or psychological consequences of the involved injuries, compensation at a rate of $354.68 per week from January 22, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee approved below.
5. A reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due under the above Awards is hereby approved for plaintiff's counsel, which shall be deducted from the same Awards and forwarded directly thereto. For the balance of his fee defendant shall forward every fourth compensation check payable under the last Award directly to plaintiff's counsel.
6. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the February 5, 1991, April 26, 1991 and January 28, 1993 injuries by accident giving rise hereto, including as part thereof the continued treatment he requires from Dr. Plovsky and at UNA Psychological Associates for the disabling psychological or emotional problems that he has developed as a cumulative effect of the involved injuries, when bills for the same are submitted in accordance with the Industrial Commission rules.
7. Defendant shall bear the cost, including as part thereof, expert witness fees in the amount of $900 to Dr. Nitka and $400 each to Dr. Badawi and Dr. Plovsky who appeared by way of deposition and gave expert medical testimony, as well as the $150 and $375 expert witness fees previously awarded Dr. Bland and the therapist involved, Roger Reid, for their expert testimony to the extent the same has not already been paid.
This the ___ day of December 1997.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ EDWARD GARNER, JR. COMMISSIONER
LKM/bjp